IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



KATHY DUNCAN and ELIDA TOVAR,
Plaintiffs,
-vs-

TEXAS HEALTH AND HUMAN
SERVICES COMMISSION,
Defendant.

CAUSE NO.:
AU-17-CA-00023-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Texas Health and Human Services Commission (HHSC)'s Motion for Summary Judgment [#18], Plaintiffs Kathy Duncan and Elida Tovar's Response [#22] in opposition, and HHSC's Reply [#23] in support. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and order.

**Background**

This is a wage discrimination case. Plaintiffs Kathy Duncan and Elida Tovar allege the HHSC discriminated against them on the basis of sex when it offered Duncan and Tovar a lower starting salary than that extended to a male colleague, Nicodemus Thiongo. Am. Compl. [#8] at 2–3.

Between 2014 and 2015, Duncan, Tovar, and Thiongo all applied for a Nurse IV position as a Reconsideration Nurse within the Nursing Facility Utilization Review Unit (UR Unit) at the HHSC Office of the Inspector General. Mot. Summ. J. [#18] at 6–8; Resp. Mot. Summ. J. [#22] at 3–4. When a nursing facility's request for Medicaid reimbursement is denied by HHSC, the nursing facility can request reconsideration of the denial. Resp. Mot. Summ. J. [#22] at 2–3. The

1

UR Unit is responsible for reviewing the reconsideration request to determine whether reimbursement should be granted. *Id.* Nurse IV salaries within the UR Unit range from a minimum of $4,598.66 to a maximum of $7,349.00 per month. Mot. Summ. J. [#18-1] Ex. A at 5–7 (Salary Policy).

With this background in mind, the Court turns to the individual hiring experiences of Duncan, Tovar, and Thiongo.

<u>Duncan Application</u>

In March 2014, Duncan applied for a position as a Reconsideration Nurse. Mot. Summ. J. [#18-1] Ex. A at 1–3 (Carlson Decl.). Duncan received her Registered Nurse (RN) license in 2000 and has spent over 13 years in the nursing field. Resp. Mot. Summ. J. [#22-4] Ex. 4 at 3–12 (Duncan Job Application). She has previously been employed as a Director of Nurses in a long-term care facility, and at the time Duncan applied for a position in the UR Unit, she had been employed by the Texas Board of Nursing for four and a half years as a Supervising Investigator. Duncan Job Application. Duncan made $4,928 per month as a Supervising Investigator. *Id.* At the time Duncan applied, there was only one open Nurse IV position within the UR Unit. *Id.*

After Duncan applied for a Reconsideration Nurse position in the UR Unit, she was interviewed by Supervisor Linda Carlson. Carlson decided to offer Duncan the position, and, in line with her usual practice, Carlson began salary negotiations by offering Duncan the minimum starting salary for the position—$4,598.66 per month. Mot. Summ. J. [#18-3] Ex. C (Duncan Dep.) at 8–9; Resp. Mot. Summ J. [#22-1] Ex. 1 (Carlson Dep.) at 15–16. In response, Duncan asked if Carlson could match or exceed her current salary of $4,928 per month. Duncan Dep. at 9. Carlson replied that HHSC could match her current salary at the Board of Nursing but could

2

not pay more than that amount. Carlson Dep. at 9. Duncan accepted this counteroffer and received a starting salary of $4,928 per month. Carlson Decl. at 2.

Thiongo Application

Roughly a year later, in March 2015, Thiongo applied for a position as a Reconsideration Nurse in the UR Unit. *Id.* at 2–3. At that time, there were multiple openings available in the UR Unit.[1] *Id.* Thiongo received his RN license in 2012. Mot. Summ. J. [#18-1] at 25–30. Prior to applying for a position in the UR Unit, Thiongo served as an Assistant Director of Nursing at a rehabilitation center, as a Clinical Director at a home healthcare organization, and as a Corporate Director of Nursing for a nursing and rehabilitation center. *Id.*

Despite her general rule of initially offering applicants the minimum starting salary, Carlson began salary negotiations by offering Thiongo a starting salary of $5,973.83 per month—roughly $1,300 more per month than was offered to Duncan. Carlson Decl. at 3; Mot. Summ. J. [#18] at 7–8. Thiongo demurred, however, and, after some back-and-forth, eventually accepted an offer of $6,200 per month—roughly $100 per month more than his private sector salary. Resp. Mot. Summ. J. [#22-13] Ex. 13 (Thiongo Dep.) at 16—17; Carlson Decl. at 3. Carlson accepted this counteroffer, and Thiongo's employment began in June 2015. Carlson Decl. at 2–3.

Tovar Application

In May 2015, Carlson informed Tovar a Nurse IV position was available within the UR Unit. *Id.* at 2. Tovar—who at that time worked as Nurse IV within a different HHSC Unit—had previously asked Carlson whether it would be possible to transfer into the UR Unit. *Id.* Tovar's

---

[1] The record does not indicate whether these were openings for Nurse IV candidates or for the UR Unit generally. Carlson Decl. at 2.

3

salary was then $4,458.50 per month. *Id.* Shortly after learning of the Nurse IV opening in the UR Unit, Tovar interviewed for the position. *Id.*

After the interview, Tovar asked Carlson if she would receive a salary increase when she transferred into the UR Unit, and Carlson told Tovar she could not receive a salary increase for this sort of lateral transfer. Resp. Mot. Summ. J. [#22-11] Ex. 11 (Tovar Dep.) at 4–5. HHSC's Salary Policy prohibits salary increases for lateral transfers within the same agency where the employee's new job has the same class title and job code in the same salary group as their current position. Salary Policy. Nevertheless, Tovar opted to accept the offer and received a starting salary equal to her current pay as a Nurse IV Reviewer—$4,458.50 per month. Carlson Decl. at 2.

Procedural Posture

After learning their starting salaries were significantly lower than Thiongo's, Plaintiffs filed suit against HHSC in state court alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d). Notice Removal [#1-4] Ex. 4 at 3–7 (Pet.). HHSC removed the action to this Court on January 17, 2017 and now files a motion for summary judgment on all claims. Mot. Summ. J. [#18]. This pending motion is ripe for review.

**Analysis**

**I.    Legal Standard**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a

4

reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing

5

sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**II.     Application**

To establish a prima facie case of wage discrimination under 29 U.S.C. § 206(d), a plaintiff must show (1) the employer pays different wages to men and women; (2) the employees perform equal work on jobs the performance of which requires equal skill, effort, and responsibility; and (3) the employees perform their jobs under similar working conditions. *See Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 Fed. App'x 280, 283 (5th Cir. 2014) (internal quotation marks omitted) (citing 29 U.S.C. § 206(d)(1)). Once the employee has carried her burden of establishing a prima facie case, the burden shifts to the employer to show the wage differential is justified under one of the four exceptions contained in § 206(d)(1). *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). "These exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion" and are narrowly construed. *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987) (internal quotation marks and citation omitted); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1047 (5th Cir. 1973).[2] Relevant here, one of the exceptions in § 206(d) states an employer is not liable for a pay differential based on a factor other than sex. 29 U.S.C. § 206(d)(1).

Plaintiffs argue Thiongo was paid more solely because of his gender and prior salary. Resp. Mot. Summ. J. [#22] at 8–14. In turn, HHSC concedes Plaintiffs have made out a prima facie case of wage discrimination but contends summary judgment is appropriate because it has established that an exception to § 206(d) applies. Mot. Summ. J. [#18] at 10, 11–14. Specifically, HHSC contends it paid Thiongo a higher salary because Thiongo possessed particularly valuable

---

[2] By contrast, in Title VII cases, the burden of persuasion "always remains with the plaintiff." *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).

6

work experience and because it was trying to match Thiongo's private sector salary. *Id.* Because the applicability of this exception is an affirmative defense, HHSR bears the burden of showing there is no genuine dispute the pay differential is based on a factor other than sex. *Peters*, 818 F.2d at 1153. The Court addresses the claims of each plaintiff in turn.

A. **Duncan**

There is a genuine issue of material fact as to whether Duncan was paid less than Thiongo on the basis of a factor other than sex. Carlson employed arguably disparate negotiating tactics in her salary negotiations with Duncan and Thiongo. Carlson began salary negotiations with Duncan by offering the minimum possible salary—$4,598.66 per month. Duncan Dep. at 8–9; Carlson Dep. at 15–16. When Duncan pointed out this was less than she currently made and explained she had hoped to receive a higher salary, Carlson told Duncan HHSC could offer her a salary that would match—but not exceed—her current salary. Duncan Dep. at 8–9.

By contrast, Carlson began salary negotiations with Thiongo by offering $5,973.83 per month—30 percent more than Carlson initially offered Duncan or any of the other female job applicants. Carlson Decl. at 2–3. Mot. Summ. J. [#18] at 8. After Thiongo rejected this offer on the basis it was lower than his current salary, Carlson responded with an offer that not just met, but exceeded, Thiongo's alleged private sector salary. *See* Carlson Decl. at 2–3 (stating Carlson offered Thiongo a starting salary of $6,200 per month); Mot. Summ. J. [#18] at 8 (asserting Thiongo made approximately $6,083 per month in the private sector).

Though HHSC argues it needed to quickly fill the position and points to Thiongo's qualifications and prior salary as justifying this pay disparity, a reasonable factfinder could reject HHSC's position that the salary disparity was the result of a factor other than sex and find HHSC discriminatorily applied its negotiation policy by allowing Thiongo greater latitude to negotiate.

7

*See Thibodeaux-Woody*, 593 F. App'x at 283–85 (finding genuine issue of material fact precluded summary judgment where female applicant was denied an equal chance to negotiate her salary); *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362–63 (11th Cir. 2018) (denying summary judgment on affirmative defense where defendant argued male employee's prior salary and experience justified pay disparity); *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018) (finding defendants were not entitled to summary judgment on their affirmative defense simply because the employees' "qualifications, certifications, and employment history . . . *could* explain or *may* explain the salary disparity" (emphasis in original)).[3] The Court thus denies summary judgment on HHSC's affirmative defense.

### B. Tovar

However, no genuine issue of material fact exists as to whether Tovar was paid less than Thiongo on the basis of a factor other than sex. HHSC policy narrowly prohibits salary increases for lateral transfers within the same agency where the employee's new job has the same class title and job code and is in the same salary group as the employee's current position. Salary Policy. Tovar does not dispute that she fell within the ambit of this policy, nor does she explain why this policy should not apply. *See* Resp. Mot. Summ. J. [#22] at 9–10.[4] As a result, Carlson

---

[3] Indeed, it is an open question in the Fifth Circuit whether negotiation even qualifies as a "factor other than sex." *Id.* ("[W]e need not—and do not—decide whether negotiation is a proper 'factor other than sex.'"). Relatedly, although it does not appear the Fifth Circuit has yet addressed the question, several circuits have found that employers may not seek refuge under the "factor other than sex" exception where the defendant's sole justification for a pay disparity is an applicant's prior pay. *See, e.g., Rizo v. Yovino*, No. 16-15372, 2018 WL 1702982 (9th Cir. April 9, 2018) (en banc) (majority opinion) (concluding applicant's previous salary is not a "factor other than sex" but declining to decide whether salary may play a role in the course of individualized salary negotiations); *id.* at 16 (Watford, J., concurring) ("If an employer seeks to justify paying women less than men by relying on past pay, it bears the burden of proving that its female employees' past pay is not tainted by sex discrimination, including discriminatory pay differentials attributable to prevailing market forces."); *id.* at 12 (McKeown, J., concurring) (concluding "prior salary alone is not a defense to unequal pay for equal work" but noting "employers do not necessarily violate the Equal Pay Act when they consider prior salary among other factors when setting initial wages").

[4] Though Tovar does argue agency policy "required HHSC to pay Tovar within the pay range for the Nurse IV position," Tovar does not elaborate or cite any HHSC policy in support of her position. Further, this argument is

8

lacked discretion under the policy to offer Tovar any salary other than her current Nurse IV salary. Carlson Decl. at 2. In these circumstances, the HHSC policy qualifies as a factor other than sex, and HHSC is entitled to summary judgment on its affirmative defense as to Tovar's claim.

## Conclusion

The Court denies summary judgment as to Duncan's claim and finds a genuine issue of material fact exists as to whether the pay differential between Duncan and Thiongo is based on a factor other than sex. However, the Court grants summary judgment on Tovar's claim, finding HHSC has shown as a matter of law that the pay differential between Tovar and Thiongo was based on a "factor other than sex."

Accordingly,

IT IS ORDERED that HHSC's Motion for Summary Judgment [#18] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 17th day of April 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE

---

clearly belied by the plain language of the Salary Policy. *See* Salary Policy (stating some transferees must receive "at least the minimum salary of the new salary group" but explicitly stating lateral transfers within the same agency to a position with "the same class title and job code in the same salary group as their current position" can receive "no increase in current salary").